UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ANDREW MANN, )
)
    Plaintiff, )
)
v. ) No.: 3:16-CV-537-HSM-CCS
)
DOUG COOK, DARREN SETTLES, )
CENTURION MEDICAL PROVIDER for )
TDOC, and HEALTH )
ADMINISTRATION DSNF, )
)
    Defendants. )

## **MEMORANDUM OPINION**

The Court is in receipt of a pro se state prisoner's civil rights complaint[1] under 42 U.S.C. § 1983 [Doc. 5] and two motions for leave to proceed *in forma pauperis* [Doc. 3 (in part)[2] and 6]. Plaintiff alleges that he has been denied proper medical care for mastoiditis behind his left ear and a mass in his head [Doc. 5]. Plaintiff identifies the Defendants as the now deceased Doug Cook; Darren Settles, Warden; Centurion Medical Provider ("Centurion"); and Health Administration at the DeBerry Special Needs Facility ("DNSF"). For the reasons set forth below, Plaintiff's motions for leave to proceed *in forma pauperis* [Docs. 3 (in part) and 6] will be **GRANTED**, no process

---

[1] Though this submission was docketed in CM/ECF as a complaint, the filing actually is an amended complaint, which the Court invited Plaintiff to file [Doc. 4 p. 3 advising Plaintiff that he "must amend his complaint to comply with Rule 8"]. For ease of discussion, the Court will refer to this filing as a complaint since that is the event under which it was docketed in CM/ECF.

[2] Plaintiff combined his initial motion for *in forma pauperis* status with a motion for appointed counsel [Doc. 3]. The Court denied the part of the combined motion that sought appointed counsel [Doc. 4], leaving for consideration only the part of the motion seeking pauper status.

shall issue, and this action will be **DISMISSED** for failure to state a claim upon which relief may be granted under § 1983.[3]

I. **FILING FEE**

It appears from the *in forma pauperis* motions that Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, the Court will **GRANT** Plaintiff's motions for leave to proceed *in forma pauperis* [Docs. 3 (part) and 6]. Because Plaintiff is an inmate in the Deberry Special Needs Facility ("DSNF"), he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account at the DSNF will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Knoxville, Tennessee 37902, as an initial partial payment, twenty percent (20%) of the greater of either the average monthly deposits or the average monthly balance in the account for the six (6) months immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1).

After full payment of the initial partial filing fee, the custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to the account), but only when the amount in the account exceeds ten dollars ($10), until the full $350 fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2). The Clerk will be **DIRECTED** to send a copy of this Memorandum Opinion and accompanying Order to the custodian of inmate accounts at the DSNF to ensure compliance with these fee-assessment procedures. The Clerk also will be **DIRECTED** to forward a copy of the Order to the Court's financial deputy.

---

[3] Given that this action will be dismissed, the Court need not take further action with regard to a suit filed against a deceased party.

## II. SCREENING STANDARDS

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim, however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim unsupported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223

(6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

## III. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on August 21, 2015, Dr. Williams, an ENT (i.e., an Ear, Nose, and Throat specialist) at the Meharry and Vanderbilt Hospitals who was treating him, set a date of September 2015 for Plaintiff to have surgery [Doc. 5 p.5]. The purpose of the surgery was to remove a mass in Plaintiff's head and to clear out an infection behind his left ear that is called mastoiditis [*Id.*]. In October of 2015, the surgery was performed. However, in the interim, Plaintiff was forced to travel more than twenty times from his then-assigned prison, Bledsoe Correctional Complex ("BCCX"), to the DSNF—a journey of some 260 miles round trip [*Id.*]. Plaintiff posits that Defendant Centurion Medical Services, the company who delivers and approves of medical care to inmates in the custody of the Tennessee Department of Correction, made him take those trips, hoping that he would refuse services so that it would not have to pay for Plaintiff's treatment and surgery [*Id.*]. Plaintiff asserts that he has taken more than fifteen antibiotics, both orally and intravenously.[4]

Dr. Williams also recommended or requested that Plaintiff have follow-up surgery to ensure "that everything was done correctly and that [Plaintiff] was free of any future infection and growth" [*Id.*]. However, Defendant Centurian and the doctors at DNSF refused to approve of the second surgery and Plaintiff has now lost over 95% of his hearing in his left ear due to the malpractice of the doctors [*Id.* at 5-6]. Plaintiff surmises that the DNSF doctors comply only with

---

[4] The Court has actively interpreted Plaintiff's assertion that he has taken fifteen "antibodies [sic] orally and also interveinacly [sic]" as an allegation that he has taken fifteen "antibiotics" orally and "intravenously." The Court will apply this method of interpretation to all allegations in the complaint that require such an approach.

the orders with which they want to comply and that they decide to provide the course of treatment that will save money for the State [*Id.* at 6].

In June of 2016, the doctors at the BCCX saw a growth protruding above Plaintiff's left ear and a couple of holes in his ear canal [*Id.*]. Due to severe pain in Plaintiff's left ear, he was rushed to the DNSF, and there he was told that he needed a prompt follow-up appointment with Dr. Williams [*Id.*]. Plaintiff had two CT-Scans performed and then saw Dr. Williams [*Id.*]. Dr. Williams advised Plaintiff that he needed another surgery to repair the holes in his ear canal and needed to remain at DNSF until the request for a second surgery was completed and he could see an audiologist for a second opinion [*Id.*].

Plaintiff was admitted to a skilled unit at DNSF for treatment that he characterizes as "a complete joke" [*Id.*]. At some point, Dr. Conway overrode Dr. Williams' request that Plaintiff remain at DNSF until he could be seen by an audiologist and, in turn, by Dr. Williams and he (Dr. Conway) sent Plaintiff back to BCCX [*Id.*]. Plaintiff maintains that, at the time of his transfer to BCCX County, he was in severe pain, the left side of his head was throbbing, and "pressure was building" [*Id.*].

Since Plaintiff's return to BCCX, he has had several seizures and now suffers from severe pain [*Id*. at 7]. The transfer from DSNF to BCCX caused Plaintiff to miss two or three appointments and surgery. The BCCX doctor who is treating Plaintiff told him that Dr. Williams had contacted him (the BCCX doctor), wondering why Plaintiff was sent back to BCCX. Nurse Practitioner Elgan Peeples has been unable, despite numerous efforts, to contact DSNF to learn why DSNF "dropped the ball again" and caused Plaintiff to miss his appointments [*Id.*]. During 2016, Plaintiff has been transported wrongfully twenty-five times from BCCX to DSNF and, the last time he made that journey, he required IV fluids to address his severe dehydration.

5

For the alleged wrongful treatment and conditions described above, Plaintiff requests: (1) that his treatment be completed, (2) that any necessary rehabilitation be provided, (3) that people with greater competence replace those of lesser competence who currently occupy positions of authority over TDOC inmates' medical treatment; (4) that he be compensated "to cover [the] cost of pain & suffering that [he] has had to endure" and the work he has missed due to all the trips to DNSF; and (5) that medical care providers made a formal apology on the record [Doc. 5 at 8].

## IV. ANALYSIS OF CLAIMS

The Cruel and Unusual Punishment provision of the Eighth Amendment protects prisoners from the infliction of "unnecessary and wanton pain and suffering." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). "[D]eliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain," which violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim is composed of two parts: an objective component, which requires a plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires him to show a sufficiently culpable state of mind—one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994).

A prison official who "knows of and disregards an excessive risk to inmate health or safety" illustrates deliberate indifference—a state of mind that requires that the official: (1) be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) "also draw the inference." *Id.* at 837. Deliberate indifference involves a state of mind comparable to criminal recklessness, *id.* at 839-40, or to a "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (2005) (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).

A prisoner whose claims are based on a theory of medical negligence has not stated a claim under § 1983 because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. Nor is the Constitution implicated where some medical treatment is given and the dispute is over the adequacy of such treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). For example, "[a] mere difference of opinion between the plaintiff and his doctor regarding diagnosis and treatment does not state a claim under the Eighth Amendment." *Koos v. Corr. Corp. of Am.,* 63 F. App'x 796, 797 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 107, and *Westlake,* 537 F.2d at 860 n. 5). Similarly, a disagreement between doctors is not a matter of concern under Eighth Amendment. *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012) (noting that one doctor's difference of opinion with another doctor's opinion is "insufficient to establish deliberate indifference").

The Court sees no constitutional claim here. By Plaintiff's own allegations, he received medical treatment in the form of fifteen antibiotics to treat his infection, two CT-Scans, surgery, and numerous consultations with and treatment by various doctors and at least one specialist. Plaintiff received medical treatment at the prisons wherein he was housed, on the skilled unit at the DNSF, and, perhaps, in hospitals. Plaintiff's detailed accounting of the treatment he received undercuts his claim of deliberate indifference. *See Estelle*, 429 U.S. at 107–08 n.16 (finding that prisoner's exhaustive description of the treatment he received made it "apparent . . . that he received extensive medical care and that the doctors were not indifferent to his needs").

The Court's conclusion of no deliberate indifference is unchanged by Plaintiff's contentions that Dr. Conway disregarded Dr. Williams' request that Plaintiff remain in the DNSF for consultation with an audiologist and a return visit with Dr. Williams and that his transfer led

7

to several missed medical appointments. The Court assumes that Dr. Conway was aware of Williams' request, though Plaintiff has offered no allegations to show that he was so aware. At most, Plaintiff's allegations as to this incident involve a difference of opinion between doctors, which does not amount to deliberate indifference. *Wilhelm*, 680 F.3d at 1123. Those allegations may constitute a medical malpractice tort, but medical negligence in a prison health care setting is not a constitutional tort to be pursued under § 1983. *Estelle,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation simply because the victim is a prisoner").

Furthermore, Plaintiff does not take into account the ongoing medical care he has been receiving at the BCCX. *See, e.g., Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) (inference of deliberate indifference unwarranted where physician orders treatment consistent with the symptoms presented and then continues to monitor patient's condition unless the need for additional treatment is obvious).

Additional reasons call for the dismissal of this complaint.

The first problem is that the Health Administration at the DSNF, named as a defendant in this complaint, is not a "person" subject to suit within the terms of § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 689-90 n.53 (1978) (finding that only "bodies politic" are "persons" who can be sued under 42 U.S.C. § 1983.) Applying *Monell*, the Sixth Circuit and district courts in this district have held that medical departments of a jail and a prison are not entities that can be sued under § 1983. *See Hix v. Tenn. Dept. of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006); *Horton v. Hamblen Cnty. Jail Med. Staff*, No. 2:07-CV-01, 2007 WL 172523, at *1 (E.D. Tenn. Jan. 18, 2007); *Sullivan v. Hamilton Cnty. Jail Staff*, No. 1:05-CV-320, 2006 WL 1582418, at *3 n.1 (E.D. Tenn. June 5, 2006). Accordingly, Plaintiff's assertions against the Health Administration at the DSNF fail to state § 1983 claims upon which relief may be granted.

8

Secondly, the complaint contains no allegations against Defendants Cook and Settles. Generous construction of pro se complaints is not limitless; indeed, a court need not assume or conjure up claims that a pro se litigant has not pleaded. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Plaintiff must affirmatively show that each Defendant he seeks to hold liable, through that Defendant's own actions, has violated Plaintiff's constitutional rights. *Robertson v. Lucas*, 753 F.3d 606, 615, (6th Cir. 2014) ("A critical aspect of the § 1983 . . . universe is that to be held liable, a plaintiff must demonstrate '"that each Government-official defendant, through the official's own individual actions, has violated the Constitution."') (quoting *Iqbal*, 556 U.S. at 676). Plaintiff has failed in this regard and, thus, Plaintiff has failed to state claims against Defendants Cook and Settles.

Moreover, the Supreme Court has held that neither states nor state agencies are "persons" within the meaning of § 1983. A suit against a defendant in his official capacity, as is the case here with respect to these Defendants, is treated as being an action against the governmental entity the officer represents. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). The BCCX Officer Defendants sued for monetary damages in their official capacities as employees of the Tennessee Department of Correction—an agency of the State of Tennessee—are not "persons" within the meaning of § 1983 who are subject to suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 & n.10 (1989); *see also Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (citing *Will*, 491 U.S. at 71).

Additionally, the Eleventh Amendment bars actions in federal court by citizens against their own state and this bar extends to a state agency in cases where state funds are potentially involved and to its employees, when sued in their official capacities. *Will*, 491 U.S. at 71; *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005); *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986).

9

Tennessee has not waived its immunity and consented to be sued. *See Quern v. Jordan*, 440 U.S. 332 (1979); *Gross v. Univ. of Tenn.*, 620 F.2d 109, 110 (6th Cir.1980); *see also* Tenn. Code Ann. § 20–13–102(a). Therefore, Defendants Cook and Settles and all claims against them also are due for dismissal on the bases that they are not "persons" within the terms of § 1983 and because the suit against them is barred by the Eleventh Amendment.

Defendant Centurian, an entity who provides medical care for inmates in TDOC's custody [Doc. 2 at 3], does not enjoy Eleventh Amendment immunity. A private entity who contracts to provide medical services to state inmates may be held liable "on the basis of its own policy or custom." *Grayson v. Corr. Corp. of Am.*, No. 1:12-CV-63, 2012 WL 2022440, at *4 (E.D. Tenn. June 5, 2012) (citing *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)); *see also Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996) (applying *Monell*'s municipal liability standard to a private corporation that operates prisons). Thus, to hold Centurion liable, Plaintiff must demonstrated that Centurion's policy, practice, or custom has caused him to sustain a constitutional injury. *Monell*, 436 U.S. at 691. In other words, to state a viable § 1983 claim against Centurion, Plaintiff must: (1) identify the policy, (2) connect the policy to Jefferson County itself, and (3) demonstrate that his injury was incurred because of the execution of that policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). While an inmate need not plead a theory of municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), still he must give fair notice of the claim to a defendant. *Twombly*, 550 U.S. at 555.

The complaint does not give fair notice to Defendant Centurion that it might be held liable to Plaintiff. This is so because Plaintiff fails to identify a policy to deprive inmates of necessary medical care for their serious medical needs. Of course, absent an allegation of the existence of

any such Centurion policy, Plaintiff has not connected any policy to this entity nor shown that any policy of the entity led to his injuries.

While the Court perceives that Plaintiff could be alleging that Centurion forced him to take twenty round trips from BCCX to DSNF hoping that he would refuse to undergo the rigors of traveling so far and so frequently and that Centurion, due to the refusal, would avoid paying for his medical care. However, Centurion's claimed nefarious, financial motivation to avoid rendering medical care to Plaintiff is supported only by his supposition and speculation, and such a bald, factually deficient assertion does not state a plausible claim. *Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement.") (quoting *Twombly*, 550 U.S. at 557).

## V. CONCLUSION

Because Plaintiff has failed to state a claim against Defendant, this action will be **DISMISSED** on that ground. The Court will **CERTIFY** that, for reasons contained in this opinion, any appeal from this action would not be taken in good faith. Finally, the Court concludes that the dismissal of this case for failure to state a claim will count as a strike under the 3-strikes rule in 28 U.S.C. § 1915(g).

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

>     */s/ Harry S. Mattice, Jr.*_____
> HARRY S. MATTICE, JR.
> UNITED STATES DISTRICT JUDGE